UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

368 E 148TH STREET ASSOCIATES, LLC,
a New York Limited Liability Company,
and SINGER ISLAND HEALTH, LLC, a
Florida limited liability company,

    Plaintiffs,

v.

CITY OF RIVIERA BEACH, a
Florida municipal corporation,

    Defendant.

_____

# COMPLAINT

Plaintiffs, 368 E 148TH STREET ASSOCIATES LLC, a New York Limited Liability Company, and SINGER ISLAND HEALTH, LLC, a Florida Limited Liability Company, ("Plaintiffs" or "368 East" and "Singer Island Health," respectively), file this action seeking declaratory, injunctive and monetary relief against Defendant, CITY OF RIVIERA BEACH ("City" or "Riviera Beach"), and allege:

1. Plaintiffs assert claims under Florida law for estoppel and under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 793 ("Section 504") (collectively, the "Acts"). Specifically, the City is estopped from nullifying the reasonable accommodations it granted to 368 East in 2018 to allow sober living and substance use disorder treatment at contiguous properties in the City (the "Property"), because 368 East invested hundreds of thousands of dollars in reliance on those reasonable accommodations. The City also

1

violated the Acts when it discriminated against Plaintiffs by: (a) refusing to approve business tax receipts ("BTRs") for three of the nine properties whose addresses are listed below in ¶14 for which reasonable accommodations had been granted; (b) arbitrarily and discriminatorily manufacturing and imposing a 1,200-foot spacing requirement without basis in state law or City ordinance; (c) engaging in a pattern of ignoring its obligations under the ADA, FHA and Section 504; (d) engaging in intentional discrimination under those laws; (e) reneging on a settlement of a lawsuit to grant a reasonable accommodation for three of the eight properties for which reasonable accommodations were granted; and (f) engaging in bad faith attempts to resolve this dispute. Such illegal discrimination resulted (and continues to result) in both irreparable harm and pecuniary damage to the Plaintiffs.

2. Plaintiffs offer housing for residents suffering from substance use disorders at 1166 East Blue Heron Boulevard, Riviera Beach, Florida, and also provide substance use disorder treatment at that Property.

3. Plaintiffs' residents are persons recovering from substance use disorders who need quality housing and treatment befitting their needs during their transition from rehabilitation to integrated community living. As people in active recovery, Plaintiffs' residents are disabled under, and entitled to the protections of, the Acts.

4. Plaintiffs also challenge the City's refusal to grant their request for a zoning verification or a reasonable accommodation to allow them to provide housing to their disabled residents.

**JURISDICTION AND VENUE**

5. This action is brought pursuant to Florida law, the ADA, FHA and Section 504 of the Rehabilitation Act.

6. This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1337, 1343(a) and 1391(b)(2), 29 U.S.C. § 794(a) and 42 U.S.C. § 12182(a) and over the Florida law estoppel claim pursuant to 28 U.S.C. § 1367.

7. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391.

**PARTIES**

8. Plaintiff, 368 E 148th Street Associates LLC, is a New York limited liability corporation.

9. Plaintiff, Singer Island Health Health, LLC, is a Florida limited liability corporation.

10. Singer Island Health is a treatment provider that meets the standards for inpatient and outpatient treatment and will be licensed in accordance with Chapter 397, Fla. Stat., by the Florida Department of Children & Families ("DCF") to provide substance use disorder services. As a condition of licensure, DCF requires Singer Island Health and other licensees to provide proof that their facilities are properly zoned.

11. Plaintiffs sue on their own behalf and on behalf of their residents.

12. The City of Riviera Beach is a Florida municipal corporation.

13. The City receives federal financial assistance for its programs and activities and has the capacity to sue and be sued under the federal anti-discrimination statutes relied upon by Plaintiffs.

**FACTS**

14. 368 East owns property in Palm Beach County, Florida that is within the municipal limits of the City and bears the street address of 1166 East Blue Heron Boulevard. In addition, it owns eight other adjacent properties located at 2621 Park Avenue, 2631 Park Avenue, 2633 Park

Avenue, 2622 West Way, 2634 West Way, 2636 West Way, 1165 Cabana Road, and 1191 Cabana Road (collectively, the "Property").

15. The City is responsible for regulating all land use and development within its boundaries pursuant to § 163.3167(1), Fla. Stat.

16. In 2017, 368 East was approached by multiple tenants who were interested in developing the Property to offer "residential treatment" and/or "detoxification services" as the terms are defined in §§ 397.311(26)(a)(9) and 397.311(26)(a)(4), Fla. Stat., respectively. Although the tenants had conversations with the City's Zoning Staff regarding developing the Property to offer a residential treatment and/or detoxification services land use, the tenants were not able to confirm whether these land uses were permitted at the Property.

### 368 East's 2018 Requests for Accommodation, Prior Federal Litigation, the Settlement of that Litigation with the Granting of the Requests, and the City's Zoning Verifications to DCF

17. On January 29, 2018, Plaintiffs' zoning attorney (not the undersigned) electronically transmitted a letter, attached and incorporated as **_Exhibit A_** (the "First Letter"), on behalf of 368 East to the City's counsel and requested the opportunity to discuss, amongst other things, whether a residential treatment and detoxification services land use could be permitted at 1166 East Blue Heron Boulevard. The City did not respond to 368 East's First Letter.

18. The City's then Acting Director of Community Development, Jeff Gagnon, thereafter, indicated that the proposed use (Residential Detox) was prohibited from operating within 1000 feet of another residential drug and alcohol facility, based upon the separation requirements set forth in Chapter 419, Fla. Stat., which applies to Community Residential Homes. That assertion was incorrect for two reasons. First, it was plainly incorrect because § 419.001(1)(a), Fla. Stat., defines a Community Residential Home as applying to residents who are

4

*clients of DCF*, which Plaintiffs' residents are not. *See* **Exhibit A at 002-006**. Second, separation requirements that apply only to people with disabilities but not to the non-disabled are discriminatory on their face under the Acts.

19.   Zoning confirmation letters are typically requested by property owners and third parties from local governments for title insurance, due diligence in real estate transactions, and statutory purposes (the Department of Children and Families, which licenses substance use disorder treatment facilities to provide proof of zoning verification from a local government such as the City confirming that the use is allowed at a site for the issuance of a license) in order to confirm that specific land uses may lawfully occur at properties within the local government's jurisdiction.

20.   On February 20, 2018, Plaintiffs' zoning counsel electronically transmitted another letter on behalf of 368 East to the City's then attorney (the "Second Letter") and formally requested confirmation of whether residential treatment and detoxification services, a recovery residence, or a professional (medical) office (the "Proposed Uses") were permissible at the Property. Confirmation was requested in the form of a zoning confirmation letter. The Second Letter stated that if the City did not reply within ten days of receipt, 368 East would consider its request denied. The City did not respond to the Second Letter.

21.   On March 19, 2018, the undersigned attorney sent the City a request for reasonable accommodation under the ADA and FHA, which is attached hereto as **Exhibit C** ("Reasonable Accommodation Request").

22.   The City did not respond to, or acknowledge, the Reasonable Accommodation Request, effectively denying 368 East's requests. (The City did ask for a draft zoning verification letter, which 368 East provided, but the City did not act on that either.)

23. On April 27, 2018, 368 East sent a draft federal complaint to the City Manager, asking:

> Please have the City execute the proposed zoning verification letter by Monday at 5 p.m. or my client will file the attached federal lawsuit. The solution is so simple.

**_Exhibit D_**. The City refused to act, or even provide a date and time when it would respond.

24. On May 1, 2018, 386 East filed a lawsuit, *368 E 148th Street Associates, LLC v. City of Riviera Beach*, Case No. 18-cv-80565 (Rosenberg), in this Court (S.D. Fla.), challenging, among other things, the City's refusal to grant a reasonable accommodation, and seeking damages and declaratory and injunctive relief based upon the conduct alleged above.

25. Immediately thereafter, the then-City Attorney, Andy DeGraffenreidt, agreed to get the reasonable accommodation request granted and the zoning verification letter issued in exchange for Plaintiffs dropping their lawsuit.

26. On or about May 3, 2018, the City's Acting Director of Community Development, Mr. Gagnon, granted the reasonable accommodation request and issued the zoning verification letter as to 1166 East Blue Heron Boulevard. **_Exhibit D_**. On or about May 28, 2018, 368 East filed a Notice of Voluntary dismissal without prejudice.

27. Subsequently, Plaintiff 386 East requested reasonable accommodations and zoning verifications as to its eight other adjacent properties located at 2621 Park Avenue, 2631 Park Avenue, 2633 Park Avenue, 2622 West Way, 2634 West Way, 2636 West Way, 1165 Cabana Road, and 1191 Cabana Road, which was granted on August 16, 2018. *Id*.

### 368 East and Singer Island Health's Reliance on the Granting of the Reasonable Accommodation Request and the Zoning Verification Letter

28. In reliance on the granting of the reasonable accommodation request and the zoning verification letter in exchange for dropping the lawsuit, 368 East pulled various permits and undertook a total renovation of buildings in need, spending hundreds of thousands of dollars.

29. On or about June 2021, Singer Island Health, as the treatment provider, entered into a 20-year lease with 368 East, also in reliance on the granting of the reasonable accommodation request and the zoning verification letter, and expended hundreds of thousands of dollars in staff and other expenses.

30. On or about June 2021, Singer Island Health applied for and received business tax receipts ("BTRs") on five of the eight properties referenced in the reasonable accommodation request and the zoning verification letter. BTRs are local tax receipts which allow businesses such as Singer Island Health to operate businesses, including group homes, on the Property, and issuance of BTRs requires proof of zoning, which Plaintiffs received pursuant to the reasonable accommodations and zoning verification letters described above.

31. As to the remaining three properties referenced in the reasonable accommodation request and the zoning verification letter, Singer Island Health chose to wait on applying for business tax receipts until it was able to get its business up and running.

32. In November 2021, Singer Island Health submitted business tax receipt applications to do business at 2622 West Way, 2634 West Way and 2636 West Way, which the City had previously issued in 2019 and 2020 based on the reasonable accommodations and zoning verification letters.

33. The City has refused to issue business tax receipts on these three properties, claiming again that these buildings are within 1,200 feet of the existing buildings. ***Exhibit E***, February 22, 2022 Memorandum from Clarence Sirmons, the City's Director of Developmental

Services. (This was the same false, pretextual justification asserted prior to the 2018 lawsuit and was not asserted in June 2021 when the City issued five business tax receipts to operate on the first five properties, which are also contiguous). The City also arbitrarily misclassified 2622 West Way, 2634 West Way and 2636 West Way as "CLFs."

34. Mr. Sirmons referenced a 1,200-foot separation requirement for community residential homes of seven to 14 residents, and Mr. Gagnon referenced a 1,000-foot separation requirement for community residential homes of six or under, both of which are set forth in § 419.001(2), Fla. Stat., for community residential homes.

35. As noted above, Plaintiffs' residences are not community residential homes subject to the 1,200-foot spacing requirement of § 419.001, Fla. Stat., because the Plaintiffs' residents are not clients of DCF, AHCA or any other state agency referenced in that statute.

36. Nor is there a City ordinance that requires a 1,200-foot or other spacing requirement. Even if there were, the great weight of federal case law holds that such spacing requirements that apply only to providers of services for people with disabilities violate the ADA and FHA.

**Plaintiffs' Attempts to Resolve This Dispute Amicably**

37. Since February 22, 2022, Plaintiffs have attempted to resolve this dispute with the City amicably.

38. The following is a summary of Plaintiffs' recent attempts to resolve this dispute:

> a. On April 1, 2022, a scheduled meeting between Clarence Sirmons (City's Development Director), Dawn Wynn (City Attorney), and Plaintiffs was cancelled at the City's request; no explanation was given; Plaintiffs suggested re-scheduling for April 4, 2022.
> b. On April 4, 2022, a scheduled meeting with Mr. Sirmons and Ms. Wynn was cancelled at the City's request, re-scheduled for

8

April 6, 2022, and again cancelled at City's request; it was re-scheduled for April 7, 2022.

c. On April 7, 2022, Plaintiffs finally met with Mr. Sirmons and Ms. Wynn. Singer Island Health stated that as a result of the City's refusal to issue the BTRs, it is losing more than $300,000 per month, and Plaintiffs are not able to treat many patients who need treatment. Plaintiffs asked for a response in 10 days.

d. When Plaintiffs' counsel returned to the office from the meeting, he sent Mr. Sirmons the following:

> Dear Clarence,
>
> I hope today's discussion was helpful.
>
> As requested, here are the key background documents:
>
> The letter to Andy [DeGraffenreidt, former City Attorney who was sent the original reasonable accommodation request] from Justin Claud, one of my co-counsel, attaching the letter from Len Rubin, Village Attorney from North Palm Beach, explaining why the Ch. 419, Fla. Stat. 1,200 feet spacing requirement doesn't apply to facilities that don't treat or house clients of DCF and other state agencies;
>
> The reasonable accommodation request from 368 E. 148th Street Associates, LLC to the City;
>
> The federal lawsuit (without exhibits); and
>
> The zoning verification letters granting the reasonable accommodation request.
>
> The zoning verification letter effectuated the settlement of the lawsuit. Nothing more should be required of my clients.
>
> My clients will, however, consider voluntarily providing you with a site plan for information purposes only, but not if it requires any approvals.
>
> My client is losing substantial revenues every month due to the City's failure to honor the reasonable accommodation provided by your predecessor.
>
> **I trust we can resolve this matter within 10 days by approving BTRs for the properties listed in the zoning verification letter that were not approved in Ms. Savage Dunham's letter dated May 21, 2021**.
>
> Please call with any questions.
>
> Thank you for your anticipated cooperation.
>
> Regards,
>
> Jim

e. On April 11, 2022, Mr. Sirmons responded:

9

> Thank you for sending. I am having trouble finding the reasonable accommodation request. Could you help me locate that within these documents?
> Clarence

f. On April 12, 2022, Plaintiffs' counsel responded:
> Clarence,
> I believe this was included in the docs I sent you Friday.
> Jim

g. On April 28, 2022, Ms. Wynn emailed:
> Hi Jim,
> After review of the materials you forwarded to us, we have scheduled an internal meeting for late next week and plan to have a response to you the week of May 9th.
> Thank you for your patience.
> Best Regards,
> Dawn S. Wynn, Esq.
> City Attorney

h. On May 11, 2022, Plaintiffs' counsel emailed Ms. Wynn:
> Dawn,
> Where are we?
> Jim

i. Ms. Wynn responded:
> Hi Jim,
> **We'll have a response to you today or tomorrow**.
> Best Regards,
> Dawn S. Wynn, Esq.
> City Attorney

j. On May 11, 2022, no response was received.

k. On May 13, 2022, no response was received. Plaintiffs' counsel called Ms. Wynn and left a message, but counsel's call was never returned.

l. As of May 20, 2022, no response had been received. It had now been over six (6) weeks since the parties' meeting on April 7th.

m. Finally, on May 24, 2022, the City responded by stating that the "Development Services Department will not be altering its decision to deny the issuance of the BTRs" and specifically referenced "Mr. Sirmons' [February 22, 2022] denial letter pertaining to the BTRs for the Properties, **which letter shall continue to articulate the City's decision regarding those circumstances utilized in issuing a denial to the Applicant for the BTRs at the Properties**." (emphasis added).

10

       ***n.***     The City's May 24, 2022 letter also specifically referenced the February 22, 2022 Memorandum from Clarence Sirmons, the City's Director of Developmental Services, which included reference to the inapplicable Chapter 419, Fla. Stat.'s 1,000-foot separation requirement, which was the same false, pretextual justification asserted prior to the 2018 lawsuit and which was not asserted in June 2021 when the City issued five business tax receipts to operate on the first five properties, which are also contiguous. ***Exhibit G.***

(bolded emphasis added).

## The City's History of Discrimination Against Substance Use Disorder Treatment Providers and Their Patients

39. The City has a history of intentional discrimination against substance use disorder treatment providers. Since 2018, the Property has been used for land uses associated with sober living and substance use disorder treatment.

40. City staff has attempted to prevent substance use disorder treatment facilities in the past by claiming that there is an elevated police call history at other locations, but later conceding that there were no comparable statistics on whether these "police stats" were elevated compared to other residential zoning.

41. The City's Planning and Zoning Board repeatedly received "NIMBY" ("Not In My Backyard") comments from various citizens opposing applications for substance use disorder treatment facilities and housing, such as the following: "it's right near a nicer neighborhood," "God forbid if these patients are out one day or night or whatever and they get in trouble at local businesses and . . . drive away business," "I have grandchildren that live two doors down," "[a]s residents, we believe these facilities should be located in a commercially zoned location," "[we don't want] our lovely city [to be] defined as a mecca for drug abuse centers," "[w]e are concerned with the impact on our property values," "we have a problem on the island [Singer Island]. Not only does Riviera Beach have it, but our friends just south of the island also have a problem. If we

don't get a hold of this, then it starts right here. It starts right here," and "We don't need this facility in our residential area, an area that has children."

42. The City Commission itself has a similar history of discrimination. In 2011, it enacted a "one-year moratorium as to the filing, receiving, and/or processing of any application for the establishment of a substance abuse service facility," expressly targeting substance use disorder service providers licensed pursuant to Chapter 397, Fla. Stat. The moratorium ordinance facially discriminated against substance use disorder service providers but not other medical providers.

**Further Allegations**

43. There is an actual and bona fide dispute between the City and Plaintiffs regarding the three properties for which the City is refusing to issue BTRs.

44. Plaintiffs have a justiciable question and a *bona fide*, actual, and present need for a declaratory judgment regarding their legal and property rights in the face of the City's inaction.

45. Absent the grant of a permanent injunction by this Court, Plaintiffs are in doubt as to their legal rights, status, power, and privilege as property owners, residents, and constituents of the City.

46. A declaration of Plaintiffs' rights concerns a present, ascertained state of facts, and the relief sought is not merely the giving of legal advice or obtaining the answer to questions propounded from curiosity.

47. All parties with an interest in the facts and this dispute are presently before the Court.

48. Singer Island Health is suffering in excess of $300,000 per month in lost revenues as a result of the City's wrongful actions.

**Statutory and Regulatory Framework**

*FHA*:

49. In 1988, Congress amended the FHA, 42 U.S.C. § 3601 *et seq.*, to extend the guarantee of fair housing to handicapped individuals. Congress also authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the FHA. 42 U.S.C. § 3614a.

> Under the FHA, the term "handicap" means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment." 42 U.S.C. § 3602(h). The term "physical or mental impairment" includes "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of a controlled substance)."

24 C.F.R. § 100.201.

50. Under the FHA, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(1).

51. The FHA further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities about such dwelling because of the handicap of that person or persons residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(2).

52. The federal regulations implementing the FHA specifically prohibit, as a discriminatory activity, providing municipal services differently because of handicap. 24 C.F.R. § 100.70(d)(4).

53. The federal regulations further make it unlawful, because of handicap, "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking,

13

negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development." 24 C.F.R. § 100.70(a).

*ADA*:

54. Congress's stated broad goal in enacting the ADA was to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

55. Section 12132 of the ADA constitutes a general prohibition against discrimination on the basis of disability by public entities:

> [S]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

56. Zoning is an activity covered under Title II of the ADA. In the preamble to the regulations implementing 42 U.S.C. § 12132, the United States Department of Justice notes that "[T]itle II applies to anything a public entity does," 28 C.F.R. pt. 35, app. A at 438 (1998), and, in the Technical Assistance Manual compiled to interpret the ADA, expressly uses zoning as an example of a public entity's obligation to avoid discrimination.

57. The federal regulations implementing the ADA prohibit a public entity from discriminating against a qualified individual with a disability by administering a licensing program in a manner that subjects qualified individuals with disabilities to discrimination based on disability. A public entity is further prohibited from establishing requirements for the programs or activities of licensees that subject qualified individuals with disabilities to discrimination based on disability. 28 C.F.R. § 35.130(6).

58. The federal regulations also make it unlawful for a public entity to make determinations about the site or location of a facility where such determinations have the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination with respect to those facilities. 28 C.F.R. § 35.130(4)(i).

59. Because of the City's discriminatory refusal to issue BTRs as to the Property, Plaintiffs have expended time and financial resources and have lost the opportunity to conduct their business and provide a much-needed service.

***Section 504***:

60. Congress intended that individuals seeking to overcome their addiction would be protected by the Rehabilitation Act when seeking access to services, benefits, and employment provided by a federally-funded program. The Rehabilitation Act specifically recognizes as handicapped those individuals with drug addiction who are "participating in a supervised rehabilitation program and [are] no longer engaging [in the illegal use of drugs]." 29 U.S.C. § 706(8)(C)(ii)(II).

61. Section 504 of the Rehabilitation Act prohibits discrimination against persons with disabilities by any entity that receives federal financial assistance:

> no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

29 U.S.C. § 794(a).

62. Because the Rehabilitation Act broadly defines "program or activity" to include "all of the operations of a local government receiving federal financial assistance," 29 U.S.C. § 794(b)(1)(A) (1999), zoning, a normal function of a governmental entity, is a covered activity within the meaning of the Act.

## Count I: Permanent Injunctive Relief Based Upon Equitable Estoppel

63. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 48.

64. In good faith reliance upon the City of Riviera Beach's express assurances that reasonable accommodations had been granted as to the subject properties, as authorized by federal law, and that the proposed uses referenced therein were permitted uses of the Property, 386 East and Singer Island Health have suffered prejudice by making substantial changes in their positions and by incurring extensive obligations and expenses that it would be wrongful and unjust to destroy the rights they have acquired.

65. Plaintiffs have vested rights to facilities on the Property to provide substance use disorder treatment and housing as authorized by Florida law. The City is equitably estopped from now denying Plaintiffs' rights after the City's issuance of BTRs to operate the intended facilities, the City's granting of the reasonable accommodations, and the City's issuance of zoning verifications letters in 2018.

66. The City has targeted Plaintiffs and refused to issue BTRs in order to retroactively destroy Plaintiffs' vested rights, causing Plaintiffs prejudice and irreparable harm.

67. Plaintiffs have no adequate remedy at law to redress the irreparable harm that they have suffered and will suffer should injunctive relief be denied.

68. The issuance of the injunctive relief requested by Plaintiffs does not disserve the public interest.

## Count II: Claims under Title II of the ADA

69. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 48 and 54 through 59.

70. Plaintiffs' prospective residents are qualified individuals with disabilities within the meaning of 42 U.S.C. § 12101.

71. The City is a qualifying public entity within the meaning of the ADA. 42 U.S.C. § 12131(1)(A).

72. The City's application of its zoning code to prevent use of the Property by Plaintiffs' residents, as well as its refusal to honor the reasonable accommodations to its zoning code previously granted and its refusal to issue the requested BTRs, constitute discrimination under Title II of the ADA. The City's actions were also taken with the intent to discriminate against and had the effect of discriminating against persons in recovery and those who provide services to them, namely Plaintiffs and their residents.

73. Because of the City's discriminatory response to the Plaintiffs' suggested use and the illegal behavior that resulted from that response, Plaintiffs have expended significant time and financial resources and have lost the opportunity to conduct their business and provide a much-needed service.

## Count III: Fair Housing Act

74. Plaintiffs incorporate by reference paragraphs 1 through 53 above as though fully set out herein.

75. The City's application of the zoning code (including its refusal to issue the requested BTRs based upon its refusal to honor previously-granted reasonable accommodations and zoning verifications constitute discrimination under the FHA. The City has effectively made housing unavailable to Plaintiffs' prospective residents. The City's actions were undertaken with the intent to discriminate against and had the effect of discriminating against persons in recovery and those who provide services to them, namely Plaintiffs and their prospective residents.

76. Because of the City's discriminatory refusal to issue the requested BTRs and to honor the reasonable accommodations and zoning verifications previously issued as to the Property, Plaintiffs have expended significant time and financial resources and have lost the opportunity to conduct their business and provide a much-needed service.

### Count IV: Claims under the Rehabilitation Act

77. Plaintiffs incorporate by reference paragraphs 1 through 48 and 60 to 62 above as though fully set out herein.

78. The City's actions, as described above, discriminate against the prospective residents of the Property. The City took these discriminatory actions with respect to zoning while receiving federal funding.

79. The City's actions violate § 504, and such actions harmed and continue to harm the people with disabilities it serves. These acts were undertaken with the intent to discriminate against and had the effect of discriminating against persons in recovery and those who provide services to them, namely Plaintiffs and their prospective residents.

80. Because of the City's discriminatory reaction to the Property's suggested use and the illegal behavior that resulted from that reaction, Plaintiffs have expended significant time and financial resources and have lost the opportunity to conduct their business and provide a much-needed service.

### Requested Relief

WHEREFORE, Plaintiffs pray that this Court award them the following relief:

A. Find that the City is estopped from denying, and enter an injunction enjoining the City from denying Plaintiffs the requested BTRs to operate Plaintiffs' intended facility operations as authorized by Florida law.

B.	Find and declare that the City's effective refusal to verify zoning and its further refusal to honor the previously granted reasonable accommodations constitute violations of each of the Acts.

C.	Issue a permanent injunction enjoining the City from continuing to violate the Acts.

D.	Order the City to, promptly and without delay, issue BTRs based on the previously issued zoning verifications or reasonable accommodations.

E.	Award Plaintiffs damages under the Acts for the harm they experienced because of the City's discriminatory practices.

F.	Award Plaintiffs under the Acts reasonable attorney's fees and costs.

G.	Award such other relief as this Court deems appropriate, just and proper.

Respectfully submitted,

/s/James K. Green, Esq.
JAMES K. GREEN, P.A.
Flagler Center, Suite 306
501 South Flagler Drive
West Palm Beach, FL 33401
(561) 659-2029
Florida Bar No: 229466
jkg@jameskgreenlaw.com

**ATTORNEYS FOR PLAINTIFFS**